# EXHIBIT 1

# COMPLAINT

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | COVER SHEET<br>CIRCUIT COURT - CIVIL CASE<br>(Not For Domestic Relations Cases) | Case Number:<br>02-CV-201<br><br>Date of Filing:<br>11/24/2014 | ELECTRONICALLY FILED<br>11/24/2014 5:01 PM<br>02-CV-2014-903274.00<br>CIRCUIT COURT OF<br>MOBILE COUNTY, ALABAMA<br>JOJO SCHWARZAUER, CLERK |
| --- | --- | --- | --- |

## GENERAL INFORMATION

### IN THE CIRCUIT OF MOBILE COUNTY, ALABAMA
### IMC DIAGNOSTIC AND MEDICAL CLINIC, PC ET AL v. MEDICAL PROTECTIVE INS. CO

**First Plaintiff:** ☑Business  ☐Individual     **First Defendant:** ☑Business  ☐Individual
             ☐Government  ☐Other                         ☐Government  ☐Other

---

**NATURE OF SUIT:**

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS  (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☑ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD-Eviction Appeal/Unlawfyul Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☐ CVXX-Miscellaneous Circuit Civil Case

---

**ORIGIN:**  F ☑ INITIAL FILING     A ☐ APPEAL FROM DISTRICT COURT     O ☐ OTHER

         R ☐ REMANDED     T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?**  ☑Yes  ☐No

**RELIEF REQUESTED:**  ☑MONETARY AWARD REQUESTED  ☐NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**  BUR054     11/24/2014 5:01:15 PM     /s/ PETER F. BURNS MR.

**MEDIATION REQUESTED:**  ☑Yes  ☐No  ☐Undecided

ELECTRONICALLY FILED
11/24/2014 5:01 PM
02-CV-2014-903274.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

# IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

|  |  |
|---|---|
| IMC Diagnostic and Medical Clinic, PC, Roger M. Alvarado, MD, Joseph Amato, MD, Patricia Burch, MD, Scott Quitman Carver, MD, Damian Joseph Collins, MD, Cynthia Renea Crowder, MD, Michael Rayner Davis, MD, Adrian G. Divittorio, MD, John L. Dixon, MD, Blesilda Quiniones Ellis, MD, Matthew M. Eves, MD, George A. Eyrich, MD, Jeffrey David Faggard, MD, Christopher Joffre Gamard, MD, William Charles Gewin, MD, Marc Shane Gottlieb, MD, Timothy Paul Hecker, MD, Jocelyn E. Hewitt, MD, William H. Hewitt, MD, William Coley Hicks, III, MD,  Brian Scott Hollensworth, MD, Samuel Bennett Slade Hooks, MD, Anita Marie Smith Kemmerly, MD, William Roy Kleinschrodt, MD, Robert Clifton Knizley, MD, Robert Dorne Lerner, MD, Charles Scott Markle, MD, Thomas Corwin McGee, MD, Jonathan Thomas Miller, MD, Barbara Carlton Mitchell, MD, Patrick Leon Murphy, MD, John Michael O'Dowd, MD, Frederick Steven Orleans, MD, Ozgur Oztas, MD, Hercules Panayiotou, MD, Lucinda T. Patton, MD, Richard W. Pearl, MD, Robert E. Percy, MD, Sudeep Rao, MD, Mark Edward Reese, MD, Theresa Pryor Roca, MD, David Charles Ross, MD, Maher N. Sahawneh, MD, Daren A. Scroggie, MD, Laura Anne Shaver, MD, David Moss Shaw, MD, Stephen T. Simpson, MD, Larry Brent Thead, MD, Richard Jason Valentine, MD, Kevin Keith Varden, MD, Sumit Verma, MD, Jacob Bond Webster, MD, Jason Robbins West, MD, Almand Joseph Westbrook, MD, Noah Brice Whetstone, MD, Terry T. Wilsdorf, MD, Elizabeth D. Wood, MD, Bobby Anthony Wrights, MD | Case No. |
| **Plaintiffs,** |  |

v.

**Medical Protective Insurance Co.,**

   **Defendant.**

## COMPLAINT

### PARTIES

1. Plaintiff, IMC Diagnostic and Medical Clinic, PC, is an Alabama Professional Corporation engaged in the business of hiring doctors who provide medical care to patients with a wide variety of medical conditions.  DPG's offices are at 1700 Spring Hill Avenue Mobile Alabama.

2. Plaintiffs, Roger M. Alvarado, MD, Joseph Amato, MD, Patricia Burch, MD, Scott Quitman Carver, MD, Damian Joseph Collins, MD, Cynthia Renea Crowder, MD, Michael Rayner Davis, MD, Adrian G. Divittorio, MD, John L. Dixon, MD, Blesilda Quiniones Ellis, MD, Matthew M. Eves, MD, George A. Eyrich, MD, Jeffrey David Faggard, MD, Christopher Joffre Gamard, MD, William Charles Gewin, MD, Marc Shane Gottlieb, MD, Timothy Paul Hecker, MD, Jocelyn E. Hewitt, MD, William H. Hewitt, MD, William Coley Hicks, III, MD, Brian Scott Hollensworth, MD, Samuel Bennett Slade Hooks, MD, Anita Marie Smith Kemmerly, MD, William Roy Kleinschrodt, MD, Robert Clifton Knizley, MD, Robert Dorne Lerner, MD, Charles Scott Markle, MD, Thomas Corwin McGee, MD, Jonathan Thomas Miller, MD, Barbara Carlton Mitchell, MD, Patrick Leon

2

Murphy, MD, John Michael O'Dowd, MD, Frederick Steven Orleans, MD, Ozgur Oztas, MD, Hercules Panayiotou, MD, Lucinda T. Patton, MD, Richard W. Pearl, MD, Robert E. Percy, MD, Sudeep Rao, MD, Mark Edward Reese, MD, Theresa Pryor Roca, MD, David Charles Ross, MD, Maher N. Sahawneh, MD, Daren A. Scroggie, MD, Laura Anne Shaver, MD, David Moss Shaw, MD, Stephen T. Simpson, MD, Larry Brent Thead, MD, Richard Jason Valentine, MD, Kevin Keith Varden, MD, Sumit Verma, MD, Jacob Bond Webster, MD, Jason Robbins West, MD, Almand Joseph Westbrook, MD, Noah Brice Whetstone, MD, Terry T. Wilsdorf, MD, Elizabeth D. Wood, MD, Bobby Anthony Wrights, MD, are medical doctors affiliated with DPG and insured by Defendant Medical Protective Insurance Company (hereinafter MedPro) under the policy made the basis of this suit.

3. MedPro is an out-of-state corporation licensed to do business in the state of Alabama.

## FACTS

4. From its inception in 1988 through March 1, 2013 DPG and its individual physicians (hereinafter collectively referred to herein as "DPG") purchased liability insurance from Pro Assurance Group (hereinafter "ProAssurance").

5. Shortly before March 2013 DPG was approached about moving its coverage from ProAssurance to MedPro.

3

6. In deciding whether to change insurance companies after almost 30 years, it was important to DPG that its new insurer would have the integrity, experience and wherewithal to handle any covered claim that DPG might face.

7. MedPro represented itself as being more than capable of handling any covered claim that DPG might face.  Specifically, MedPro represented to DPG that

   a.  it has "99% claims service satisfaction" and

   b.  it is "achieving 99% risk management satisfaction."

8. MedPro explained that it had such impressive claims satisfaction rates because

   a. It was a Warren Buffett/Berkshire Hathaway company with billions in assets to handle all claims.

   b. It has unmatched strength and superior solutions to physicians for three times longer than its closest competitor.

   c. Its claims managers average 25 years of experience.

9. Willis Group Holdings plc (hereinafter "Willis") is an insurance broker, developing and delivering, among other things, professional insurance.  Willis acted as an intermediary between DPG and MedPRo and assisted them in negotiating the terms of DPG's new policy with MedPro.

10. To induce DPG to replace its ProAssurance policy, MedPro agreed to provide coverage for any occurrence which took place on or after the retroactive date of the policy which the parties agreed was December 30, 1988.  This was an important provision because that was the coverage date DPG had with ProAssurance.

4

11. On March 1, 2013, in reliance upon MedPro's representations, DPG replaced its ProAssurance policy with a "claims made" policy offered by MedPro and negotiated by Willis. As of that date MedPro replaced ProAssurance as the professional insurance company for DPG.

12. Among the coverages DPG purchased was Medicare/Medicaid Billing Action Endorsement coverage which provides, in part:

> The company will also pay, on behalf of an insured entity (including its subsidiaries and agents), defense costs arising from a governmental billing action. However, the governmental billing action must arise from bills or requests for reimbursement for professional services rendered, or which should have been rendered, by the insured entity on or after the retroactive date. In addition, the governmental billing action must have been first brought against the Insured entity, or its subsidiary, during the policy period. Furthermore, the governmental billing action must have been reported to the company, in writing, during the policy period or 30 days thereafter, to be covered.

13. On August 7, 2013, during the pendency of the Med Pro policy, a Medicare/Medicaid Billing Action was filed against DPG in *US ex rel Heesch v. Diagnostic Physicians Group, P.C. et al.*, Civil Action No. 11-0364-KD-B (S.D. Ala.) (hereinafter "the claim").

14. DPG and Willis duly submitted the claim to MedPro on August 8, 2013.

15. Two months later, on October 8, 2013 MedPro denied coverage based upon its erroneous contention that the claim was not made during the policy period.

16. Over the following several months, DPG and Willis insisted that the claim fell after the retroactive date of December 30, 1988 and urged MedPro to reconsider

5

its denial.   During this period the doctors covered on the DPG felt the MedPro had betrayed them and DPG was actively considering filing a suit against MedPro, cancelling its policy and demanding a premium refund.

17. On or around January 20, 2014, certain Willis executives including Charles Black, Executive Vice President, Professional Liability, David Webster, Senior Vice President and Client Advocate and John Baker had a conference call with Geoff Lambert, coverage counsel for MedPro, and several of his colleagues.

18. The purpose of that conference was for MedPro to clarify its position with regard to coverage so that Willis could accurately explain MedPro's position to DPG at a meeting scheduled for the following morning.

19. During the January 20, 2014 conference Med Pro's representatives confirmed that

    a.  The original denial was incorrect and the claim does fall within the policy.

    b.  MedPro would honor the policy limits of $25,000 per claim/per doctor with an annual aggregate of $100,000 per doctor.

20. MedPro did not disclose that it intended to impose "eligibility requirements" which would limit physician coverage to those who were named in the complaint or summoned for deposition.   Those "eligibility requirements" appear nowhere in the insurance policy.

21. The following day, January 21, 2014 Willis representatives John Baker and David Webster informed representatives of DPG that MedPro had reconsidered its

6

position and that the claim was covered with limits of $25,000 per claim/per doctor with an annual aggregate of $100,000 per doctor.

22. In reliance upon MedPro's representations, as communicated by the Willis representatives, DPG formulated litigation strategy, retained its policy with MedPro, did not demand a premium refund and did not file suit against MedPro.

23. Thereafter, on or around February 6, 2014 MedPro began attempting to impose eligibility restrictions on its coverage which restrictions are in conflict with its policy and contrary to the representations which MedPro made to Willis on January 20 and which Willis repeated to DPG on January 21.

24. DPG has incurred legal bills which MedPro was obligated to pay totaling $998,577.84. Those bills have been presented to MedPro along with the affidavit of a Willis executive substantiating the representations MedPro made to Willis and confirming that Willis repeated those representations to DPG.

25. In spite of the terms of its policy and the representations which MedPro caused to be made and upon which DPG relied, MedPro has refused to honor its obligations.

26. The doctors insured under the MedPro policy have suffered anxiety and mental distress as a result of the emotional roller coaster MedPro has inflicted upon them by failing to properly handle their claims and by misrepresenting itself and its intent to honor its policy.

**COUNT ONE**
*(BREACH OF CONTRACT)*

7

27. DPG adopts the averments contained in paragraphs 1-26 and restates the same as if fully set out herein.

28. MedPro breached its contract of insurance with DPG as described herein and caused DPG to suffer damages in the amount of $998,577.84 representing the legal fees DPG incurred for defense from the time the government's complaint was filed until it was settled.

Wherefore, DPG demands a judgment for compensatory damages in the amount of $998,577.84 plus interest and costs.

## COUNT TWO
### (FRAUD IN THE INDUCEMENT)

29. DPG adopts the averments of paragraphs 1-26 and restates the same as if fully set out herein.

30. Based upon their actual experience with MedPro, DPG alleges upon information and belief, that contrary to the MedPro representations upon which DPG relied in purchasing its policy MedPro

    a. does not have a 99% claims service satisfaction rate

    b. does not have 99% risk management satisfaction

31. DPG not knowing the true facts relied upon MedPro's representation and in reliance upon them cancelled its policy with ProAssurance and purchased a MedPro policy.

8

32. Contrary to the representations MedPro caused to be made to DPG on January 20, 2014 and upon which DPG relied in making litigation decisions, electing not to cancel its policy with MedPro and demand a premium refund, MedPro now claims it is not obligated to provide the policy limits of $25,000 per claim/per doctor with an annual aggregate of $100,000 per doctor as it promised on January 21, 2013.

Wherefore, DPG demands a judgment for compensatory and punitive damages in the amount sufficient to compensate DPG for the injuries and damages it has suffered and to punish MedPro and deter it and others from engaging in similar conduct in the future.

## COUNT THREE
### (FRAUDULENT SUPPRESSION)

33. DPG adopts the averments of paragraphs 1-32 and restates the same as if fully set out herein.

34. In describing the terms of its coverage on January 20, 2014 MedPro failed to disclose that it was unilaterally imposing "eligibility requirements" and that its coverage

   a. would only be available to DPG physicians who were named in the complaint, or to

   b. physicians who were summoned for deposition in the case.

35. MedPro's intent to impose "eligibility requirements" was a material fact which DPG was entitled to know in making its decision whether to rescind its contract with MedPro.

9

36. MedPro fraudulently suppressed its "eligibility requirements" in an effort to deceive DPG.

37. DPG, being ignorant of the true facts and relying upon representations made by MedPro made litigation decisions, chose not to rescind its policy and suffered the injuries and damages set out herein.

Wherefore, DPG demands a judgment for compensatory and punitive damages in the amount sufficient to compensate DPG for the injuries and damages it has suffered and to punish MedPro and deter it and others from engaging in similar conduct in the future.

## PLAINTIFFS DEMAND A TRIAL BY JURY

Respectfully submitted,

/s/ Peter F. Burns
PETER F. BURNS (BUR054)
Pfburns@bcmlawyers.com
WILLIAM M. CUNNINGHAM, JR (CUN006)
Wmcunningham@bcmlawyers.com

**OF COUNSEL:**
Burns, Cunningham & Mackey, P.C.
P.O. Box 1583
Mobile, Alabama 36633
(251) 432-0612/Facsimile (251) 432-0625

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL, AS FOLLOWS:**

**Medical Protective Insurance Co.**
**The Corporation Company**
**2 North Jackson Street, Suite 605**
**Montgomery, AL  36104**

10